**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**

| | |
|---|---|
| **JANNA NELSON**, *individually and on behalf of all others similarly situated*, | Case No. _____ |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | <u>**JURY TRIAL DEMANDED**</u> |
| **HCA HEALTHCARE, INC.,** | |
| Defendant. | |

Plaintiff Janna Nelson ("Plaintiff"), brings this Class Action Complaint ("Complaint") against Defendant, HCA Healthcare, Inc. ("Defendant"), as an individual and on behalf of all others similarly situated, and alleges, upon personal knowledge as to her own actions and her counsels' investigation, and upon information and belief as to all other matters, as follows:

## I.    <u>NATURE OF THE ACTION</u>

1.    Plaintiff seeks monetary damages and injunctive and declaratory relief in this action, arising from Defendant's failure to safeguard the Personally Identifiable Information[1] ("PII") and Protected Health Information ("PHI") (together, "Private Information") of patients to hospitals and physician groups that it owns and operates, resulting in unauthorized access to its information systems on or around June 2023. Defendant's exposure of that Private Information, has caused widespread injury and damages to Plaintiff and the proposed Class (defined below).

2.    Defendant, a Nashville, Tennessee-headquartered company, is a leading healthcare

---

[1] The Federal Trade Commission ("FTC") defines "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." 17 C.F.R. § 248.201(b)(8).

organization made up of 182 hospitals and more than 2,300 ambulatory care centers in 20 U.S. states and the United Kingdom.[2]

3.     As explained in detail herein, upon information and belief, on or about July 5, 2023, an unauthorized party obtained from Defendant's "external storage location exclusively used to automate the formatting of email messages"[3] a list of information pertaining to patients and made it available on an online dark web forum (the "Data Breach").[4]

4.     As a result of the Data Breach, which Defendant failed to prevent, the Private Information of patients at hospitals or physician office owned or operated by Defendant, including Plaintiff and Class members, were stolen and released including their names, cities, states, zip codes, email addresses, phone numbers, date of birth, gender, and appointment information (patient service date, location, and next appointment date).[5] Defendant's investigation concluded that the Private Information compromised in the Data Breach included Plaintiff's and approximately 11 million other patients' information, across 27 million rows of data.[6]

5.     Defendant's failure to safeguard Plaintiff's and Class members' highly sensitive Private Information in the Data Breach violates its common law duty and it's implied contract with its patients to safeguard their Private Information which was disclosed without authorization. Plaintiff and Class members now face a lifetime risk of identity theft due to the nature of the information lost, and a diminishment in the value of their private data.

---

[2]  https://hcahealthcare.com/about/ (last accessed July 11, 2023).

[3]  https://hcahealthcare.com/about/privacy-update.dot#faq7 ("HCA Healthcare Data Security Incident Report") (last accessed July 11, 2023).

[4]  https://healthitsecurity.com/news/hca-healthcare-suffers-data-breach (last accessed July 11, 2023).

[5] *Supra* n.3.

[6] *Id*.

6.     Defendant's harmful conduct has injured Plaintiff and Class members in multiple ways, including: (i) the lost or diminished value of their Private Information; (ii) costs associated with the prevention, detection, and recovery from identity theft, tax fraud, and other unauthorized use of their data; (iii) lost opportunity costs to mitigate the Data Breach's consequences, including lost time; and (iv) emotional distress associated with the loss of control over their highly sensitive Private Information.

7.     Defendant's failure to protect Class members' Private Information has harmed and will continue to harm millions of individuals, causing Plaintiff to seek relief on a class wide basis.

8.     On behalf of themselves and the Class preliminarily defined below, Plaintiff brings causes of action against Defendant for negligence, negligence *per se*, and breach of implied contract, seeking an award of monetary damages and injunctive and declaratory relief, resulting from Defendant's failure to adequately protect their highly sensitive Private Information.

## II.     JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from Defendant.

10.     This Court has personal jurisdiction over Defendant because its principal place of business is in this District and the acts and omissions giving rise to Plaintiff's claims occurred in and emanated from this District. Defendant has sufficient contacts in Tennessee, as it conducts a significant amount of its business in the state of Tennessee.

11.     Venue is proper under 18 U.S.C § 1391(b)(1) because Defendant's principal place of business is in this District.

III. **PARTIES**

A. **Plaintiff**

12. Plaintiff Janna Nelson is, and at all times mentioned herein was, an individual resident and citizen of the state of Texas, and a patient of HCA Houston Healthcare Conroe, which is one of the affected facilities listed in Defendant's Data Security Incident Report.[7]

13. Plaintiff obtained healthcare from HCA through HCA Houston Healthcare Conroe hospital, located in Conroe, Texas, multiple times over the last several years.

14. To obtain healthcare services from Defendant, Plaintiff was required to provide Defendant with her highly sensitive Private Information, which Defendant retained and stored on its computer systems, including the systems affected by the Data Breach.

15. Plaintiff takes great care to protect her Private Information, and provide her Private Information to Defendant on the condition that it be maintained as confidential and with the understanding that Defendant would employ reasonable safeguards to protect his Private Information.

16. Had Plaintiff known that HCA does not adequately protect the Private Information in its possession, she would not have obtained services from HCA or agreed to provide Defendant with her Private Information.

17. Plaintiff is very concerned about identity theft and the consequences of such theft and fraud resulting from the Data Breach.

18. Plaintiff suffered actual injury from having her Private Information compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of Plaintiff's Private Information, a form of property that HCA obtained from Plaintiff; (b) violation

---

[7] *See supra* n.3.

of Plaintiff's privacy rights; and (c) present and increased risk arising of identity theft and fraud.

19.     As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address the harms caused by the Data Breach. As a result of the Data Breach, Plaintiff is and will continue to be at increased risk of identity theft and fraud for years to come.

**B.     Defendant**

20.     Defendant is a corporation organized under the laws of Tennessee with its headquarters and principal place of business at 1 Park Plaza, Nashville, Tennessee 37203-6527.

## IV.     FACTUAL BACKGROUND

**A.     Defendant's Business**

21.     Defendant is a Nashville, Tennessee-headquartered company that owns and operates hospitals, ambulatory care centers, and physician groups in 20 U.S. states and the United Kingdom.[8]

22.     Plaintiff and Class members are current or former patients of hospitals or physician centers owned by Defendant who provided their Private Information to Defendant.

23.     The information held by Defendant at the time of the Data Breach included the unencrypted Private Information of Plaintiff and Class members.

24.     Defendant (through its providers) made promises and representations to Plaintiff and Class members that their Private Information collected would be kept safe and confidential, the privacy of that information would be maintained, and Defendant would delete any sensitive information after it was no longer required to maintain it.

---

[8] *Supra* n.3.

25. Plaintiff and Class members provided their Private Information to Defendant (via the hospitals and physician groups Defendant owns or operates) with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

26. Plaintiff and Class members have taken reasonable steps to maintain the confidentiality of their Private Information. Plaintiff and Class members relied on the sophistication of Defendant to keep their Private Information confidential and securely maintained, to use this information for necessary purposes only, and to make only authorized disclosures of this information. Plaintiff and Class members value the confidentiality of their Private Information and demand security to safeguard their Private Information.

27. Defendant had a duty to adopt reasonable measures to protect the Private Information of Plaintiff and Class members from involuntary disclosure to third parties. Defendant has a legal duty to keep its patients' Private Information safe and confidential.

28. Defendant had obligations under the FTC Act, HIPAA, contract, industry standards, and representations made to Plaintiff and Class members, to keep their Private Information confidential and to protect it from unauthorized access and disclosure.

29. Defendant derived a substantial economic benefit from collecting Plaintiff's and Class members' Private Information. Without the required submission of Private Information, Defendant could not provide the services it does through the hospitals and physician groups it operates.

30. By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class members' Private Information, Defendant assumed legal and equitable duties and knew or should

have known that it was responsible for protecting Plaintiff's and Class members' Private Information from disclosure.

**B.** **The Data Breach**

31.     According to the Data Security Incident Report, in or about July 2023, Defendant discovered that Private Information with respect to some of its patients was made available by an unknown an unauthorized party on an online forum.

32.     Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive information it was maintaining for Plaintiff and Class members, such as encrypting the information or deleting it when it is no longer needed, causing the exposure of Private Information.

33.     The attacker accessed and acquired files in Defendant's computer systems containing unencrypted Private Information of Plaintiff and Class members, including their name, date of birth, and patients' appointment information.  Plaintiff's and Class members' Private Information was accessed and stolen in the Data Breach.

**C.** **Defendant Acquires, Collects, and Stores Plaintiff's and Class members' Private Information**

34.     As a condition to obtain medical care from Defendant-owned or operated providers, Plaintiff and Class members were required to give their sensitive and confidential Private Information to Defendant.

35.     Defendant retains and stores this information and derives a substantial economic benefit from the Private Information that it collects. But for the collection of Plaintiff's and Class members' Private Information, Defendant would be unable to provide its services.

7

36. By obtaining, collecting, and storing the Private Information of Plaintiff and Class members, Defendant assumed legal and equitable duties and knew or should have known that they were responsible for protecting the Private Information from disclosure.

37. Plaintiff and Class members have taken reasonable steps to maintain the confidentiality of their Private Information and relied on Defendant to keep their Private Information confidential and maintained securely, to use this information for business purposes only, and to make only authorized disclosures of this information.

38. Defendant could have prevented this Data Breach by properly securing and encrypting the files and file servers containing the Private Information of Plaintiff and Class members.

39. Upon information and belief, Defendant (through its providers) made promises to Plaintiff and Class members to maintain and protect their Private Information, demonstrating an understanding of the importance of securing Private Information.

40. Defendant's negligence in safeguarding the Private Information of Plaintiff and Class members is exacerbated by the repeated warnings and alerts directed to protecting and securing sensitive data.

**D. Defendant Knew or Should Have Known of the Risk of a Cyber Attack Because Healthcare Entities in Possession of Private Information are Particularly Susceptible to Cyber Attacks**

41. Data thieves regularly target entities in the healthcare industry like Defendant due to the highly sensitive information that they maintain. Defendant knew and understood that unprotected Private Information is valuable and highly sought after by criminal parties who seek to illegally monetize that Private Information through unauthorized access.

42. Defendant's data security obligations were particularly important given the substantial increase in cyber-attacks and/or data breaches targeting healthcare entities like Defendant that collect and store Private Information and other sensitive information, preceding the date of the Data Breach.

43. In light of recent high profile data breaches at other industry-leading companies, including, *e.g.*, Microsoft (250 million records, December 2019), Wattpad (268 million records, June 2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January 2020), Whisper (900 million records, March 2020), and Advanced Info Service (8.3 billion records, May 2020), Defendant knew or should have known that the Private Information that it collected and maintained would be targeted by cybercriminals.

44. For example, of the 1,862 recorded data breaches in 2021, 330 of them, or 17.7%, were in the medical or healthcare industry.[9]

45. The 330 breaches reported in 2021 exposed nearly 30 million sensitive records (28,045,658), compared to only 306 breaches that exposed nearly 10 million sensitive records (9,700,238) in 2020.[10]

46. Entities in custody of PHI and/or medical information reported the largest number of data breaches among all measured sectors in 2022, with the highest rate of exposure per breach.[11] Indeed, when compromised, healthcare related data is among the most sensitive and personally consequential. A report focusing on healthcare breaches found the "average total cost

---

[9] 2021 Data Breach Annual Report (ITRC, Jan. 2022) (available at https://notified.idtheftcenter.org/s/), at 6.

[10] *Id.*

[11] *See* Identity Theft Resource Center, *2022 Annual Data Breach Report*, available at https://www.idtheftcenter.org/publication/2022-data-breach-report/ (last accessed July 11, 2023).

to resolve an identity theft-related incident . . . came to about $20,000," and that victims were often forced to pay out of pocket costs for healthcare they did not receive in order to restore coverage.[12] Almost 50 percent of the victims lost their healthcare coverage as a result of the incident, while nearly 30 percent said their insurance premiums went up after the event. 40 percent of the patients were never able to resolve their identity theft at all. Data breaches and identity theft have a crippling effect on individuals, and detrimentally impact the economy as a whole.[13]

47.    Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect the Private Information of Plaintiff and Class members from being compromised.

48.    Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's server(s), amounting to *millions* of individuals' detailed Private Information, and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

49.    In the Data Security Incident Report, Defendant states:

> HCA Healthcare disabled user access to the storage location as an immediate containment measure. HCA Healthcare also has several robust security strategies, systems, and protocols in place to help protect data. The company's efforts to protect data include ongoing education for our colleagues, physicians, vendors, and others to maintain awareness of safe practices that can help ensure compliance and the security of our information.[14]

This is wholly inadequate to compensate Plaintiff and Class members, as it fails to account for the multiple years of ongoing identity theft and financial fraud commonly faced by victims of data

---

[12] *See* Elinor Mills, *Study: Medical identity theft is costly for victims*, CNET (March 3, 2010), available at https://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims/ (last accessed July 11, 2023).

[13] *See id.*

[14] *Supra* n.3.

breaches and other unauthorized disclosures. It also fails to provide sufficient compensation to Plaintiff and Class members for the unauthorized release and disclosure of their Private Information. Moreover, once the identity theft service expires, Plaintiff and Class members will be forced to pay out of pocket for necessary identity monitoring services.

50.     Defendant's offering of identity theft protection establishes that Plaintiff's and Class members' sensitive Private Information was, in fact, compromised and exfiltrated from Defendant's computer systems. It also indicates an acknowledgement of the present and continuing risk of identity theft and fraud Plaintiff and Class members face as a result of the Data Breach.

51.     The injuries to Plaintiff and Class members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the Private Information of Plaintiff and Class members.

52.     The ramifications of Defendant's failure to keep secure the Private Information of Plaintiff and Class members are long lasting and severe. Once Private Information is stolen, fraudulent use of that information and damage to victims may continue for years.

53.     As a healthcare entity, Defendant knew, or should have known, the importance of safeguarding the Private Information entrusted to it by Plaintiff and Class members and of the foreseeable consequences if its data security systems were breached. This includes the significant costs imposed on Plaintiff and Class members because of a breach. Nevertheless, Defendant failed to take adequate cybersecurity measures to prevent the Data Breach.

### E.      Defendant Fails to Comply with FTC Guidelines

54.     The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

55. In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cyber-security guidelines for businesses. These guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[15]

56. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[16]

57. The FTC further recommends that companies not maintain Private Information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

58. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15

---

[15] *Protecting Personal Information: A Guide for Business*, Federal Trade Commission (2016), available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last accessed July 11, 2023).

[16] *Id.*

U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

59. These FTC enforcement actions include actions against healthcare entities, like Defendant. *See, e.g.*, *In the Matter of LabMD, Inc., a corp*, 2016-2 Trade Cas. (CCH) ¶ 79708, 2016 WL 4128215, at *32 (MSNET July 28, 2016) ("[T]he Commission concludes that LabMD's data security practices were unreasonable and constitute an unfair act or practice in violation of Section 5 of the FTC Act.").

60. Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect Private Information. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

61. Defendant failed to properly implement basic data security practices.

62. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's and Class members' Private Information or to comply with applicable industry standards constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

63. Upon information and belief, Defendant was at all times fully aware of its obligation to protect the Private Information of Plaintiff and Class members; Defendant was also aware of the significant repercussions that would result from its failure to do so. Accordingly, Defendant's conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

## F.    Defendant Fails to Comply with HIPAA Guidelines

64.    Defendant is a covered business associate under HIPAA (45 C.F.R. § 160.102) and is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

65.    Defendant is subject to the rules and regulations for safeguarding electronic forms of medical information pursuant to the Health Information Technology Act ("HITECH").[17] *See* 42 U.S.C. §17921, 45 C.F.R. § 160.103.

66.    HIPAA's Privacy Rule or *Standards for Privacy of Individually Identifiable Health Information* establishes national standards for the protection of health information.

67.    HIPAA's Privacy Rule or *Security Standards for the Protection of Electronic Protected Health Information* establishes a national set of security standards for protecting health information that is kept or transferred in electronic form.

68.    HIPAA requires "compl[iance] with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302.

69.    "Electronic protected health information" is "individually identifiable health information … that is (i) transmitted by electronic media; maintained in electronic media." 45 C.F.R. § 160.103.

70.    HIPAA's Security Rule requires Defendant to do the following:

---

[17] HIPAA and HITECH work in tandem to provide guidelines and rules for maintaining protected health information. HITECH references and incorporates HIPAA.

a.      Ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains, or transmits;

b.      Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

c.      Protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and

d.      Ensure compliance by its workforce.

71.     HIPAA also requires Defendant to "review and modify the security measures implemented . . . as needed to continue provision of reasonable and appropriate protection of electronic protected health information." 45 C.F.R. § 164.306(e). Additionally, Defendant is required under HIPAA to "[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1).

72.     HIPAA and HITECH also obligate Defendant to implement policies and procedures to prevent, detect, contain, and correct security violations, and to protect against uses or disclosures of electronic PHI that are reasonably anticipated but not permitted by the privacy rules. *See* 45 C.F.R. § 164.306(a)(1) and § 164.306(a)(3); *see also* 42 U.S.C. §17902.

73.     HIPAA requires a covered entity to have and apply appropriate sanctions against members of its workforce who fail to comply with the privacy policies and procedures of the covered entity or the requirements of 45 C.F.R. Part 164, Subparts D or E. *See* 45 C.F.R. § 164.530(e).

74.     HIPAA requires a covered entity to mitigate, to the extent practicable, any harmful effect that is known to the covered entity of a use or disclosure of PHI in violation of its policies

and procedures or the requirements of 45 C.F.R. Part 164, Subpart E by the covered entity or its business associate. *See* 45 C.F.R. § 164.530(f).

75.     HIPAA also requires the Office of Civil Rights ("OCR"), within HHS, to issue annual guidance documents on the provisions in the HIPAA Security Rule. *See* 45 C.F.R. §§ 164.302-164.318. For example, "HHS has developed guidance and tools to assist HIPAA covered entities in identifying and implementing the most cost effective and appropriate administrative, physical, and technical safeguards to protect the confidentiality, integrity, and availability of e-PHI and comply with the risk analysis requirements of the Security Rule." US Department of Health & Human Services, Security Rule Guidance Material.[18] The list of resources includes a link to guidelines set by the National Institute of Standards and Technology (NIST), which OCR says "represent the industry standard for good business practices with respect to standards for securing e-PHI." US Department of Health & Human Services, Guidance on Risk Analysis.[19]

**G.     Defendant Owed Plaintiff and Class members a Duty to Safeguard their Private Information**

76.     In addition to its obligations under federal and state laws, Defendant owed a duty to Plaintiff and Class members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendant owed a duty to Plaintiff and Class members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems, networks, and protocols adequately protected the Private Information of Class members.

---

[18] http://www.hhs.gov/hipaa/for-professionals/security/guidance/index.html.

[19]     https://www.hhs.gov/hipaa/for-professionals/security/guidance/guidance-risk-analysis/index.html (last accessed July 11, 2023).

77.     Defendant owed a duty to Plaintiff and Class members to create and implement reasonable data security practices and procedures to protect the Private Information in its possession, including adequately training its employees and others who accessed Private Information within its computer systems on how to adequately protect Private Information.

78.     Defendant owed a duty to Plaintiff and Class members to implement processes that would detect a compromise of Private Information in a timely manner.

79.     Defendant owed a duty to Plaintiff and Class members to act upon data security warnings and alerts in a timely fashion.

80.     Defendant owed a duty to Plaintiff and Class members to disclose in a timely and accurate manner when and how the Data Breach occurred.

81.     Defendant owed a duty of care to Plaintiff and Class members because they were foreseeable and probable victims of any inadequate data security practices.

**H.      Consequences of the Data Breach for Consumers**

82.     Plaintiff and Class members have suffered actual harm and will continue to be harmed as a result of HCA's conduct. HCA failed to institute adequate security measures and neglected system vulnerabilities that led to the Data Breach. HCA's failure to keep Plaintiff's and Class members' Private Information secure has severe ramifications. Given the sensitive nature of the Private Information stolen in the Data Breach – name, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number–hackers can commit identity theft, financial fraud, and other identity-related fraud against Plaintiff and Class members now and into the indefinite future. Plaintiff and Class members may be subject to blackmail from nefarious actors concerning the disclosure of their medical records. As a result,

Plaintiff and Class members have suffered injury and face an imminent and substantial risk of further injury including identity theft and related cybercrimes due to the Data Breach.

83. Plaintiff's stolen Private Information may now be circulating on the dark web and it is highly valuable. Malicious actors use Private Information to, among other things, gain access to consumers' bank accounts, social media, and credit cards. Malicious actors can also use consumers' Private Information to open new financial accounts, open new utility accounts, obtain medical treatment using victims' health insurance, file fraudulent tax returns, obtain government benefits, obtain government IDs, or create synthetic identities.

84. Theft of social security numbers also creates a particularly alarming situation for victims because those numbers cannot easily be replaced. In order to obtain a new number, a breach victim has to demonstrate ongoing harm from misuse of their social security number, and a new social security number will not be provided until after the harm has already been suffered by the victim.

85. Due to the highly sensitive nature of SSNs, theft of SSNs in combination with other Private Information (e.g., name, address, date of birth) is akin to having a master key to the gates of fraudulent activity. TIME Magazine quotes data security researcher Tom Stickley, who is employed by companies to find flaws in their computer systems, as stating, "If I have your name and your Social Security number and you don't have a credit freeze yet, you're easy pickings."[20]

86. Further, malicious actors often wait months or years to use the Private Information obtained in data breaches, as victims often become complacent and less diligent in monitoring their accounts after a significant period has passed. These bad actors will also re-use stolen Private

---

[20] Patrick Lucas Austin, 'It Is Absurd.' Data Breaches Show it's Time to Rethink How We Use Social Security Numbers, Experts Say, TIME (Aug. 5, 2019), https://time.com/5643643/capitalone-equifax-data-breach-social-security/.

Information, meaning individuals can be the victim of several cybercrimes stemming from a single data breach. Moreover, although elements of some of Plaintiff's and Class members' data may have been compromised in other data breaches, the fact that the Data Breach centralizes the Private Information and identifies the victims as HCA's current, former, or prospective customers materially increases the risk to Plaintiff and the Class.

87. Theft of Private Information is even more serious when it includes theft of PHI. A report published by the World Privacy Forum and presented at the U.S. FTC Workshop on Informational Injury describes what medical identity theft victims may experience:

- Changes to their health care records, most often the addition of falsified information, through improper billing activity or activity by imposters. These changes can affect the healthcare a person receives if the errors are not caught and corrected.

- Significant bills for medical goods and services neither sought nor received.

- Issues with insurance, co-pays, and insurance caps.

- Long-term credit problems based on problems with debt collectors reporting debt due to identity theft.

- Serious life consequents resulting from the crime; for example, victims have been falsely accused of being drug users based on falsified entries to their medical files; victims have had their children removed from them due to medical activities of the imposter; victims have been denied jobs due to incorrect information placed in their health files due to the crime.

- As a result of improper and/or fraudulent medical debt reporting, victims may not qualify for mortgage or other loans and may experience other financial impacts.

- Phantom medical debt collection based on medical billing or other identity information.

- Sales of medical debt arising from identity theft can perpetuate a victim's debt collection and credit problems, through no fault of their own.[21]

---

[21] Pam Dixon and John Emerson, The Geography of Medical Identity Theft, FTC.GOV (Dec. 12, 2017), http://www.worldprivacyforum.org/wpcontent/uploads/2017/12/WPF_Geography_of_Medical_Identity_Theft_fs.pdf.

88.     The U.S. Government Accountability Office determined that "stolen data may be held for up to a year or more before being used to commit identity theft," and that "once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years." Moreover, there is often a significant lag time between when a person suffers harm due to theft of their Private Information and when they discover the harm. Plaintiff and Class members will therefore need to spend time and money to continuously monitor their accounts for years to ensure the Private Information obtained in the Data Breach is not used to harm them. Plaintiff and Class members thus have been harmed in the amount of the actuarial present value of ongoing high-quality identity defense and credit monitoring services made necessary as mitigation measures because of HCA's Data Breach. In other words, Plaintiff and Class members have been harmed by the value of identity protection services they must purchase in the future to ameliorate the risk of harm they now face due to the Data Breach.

89.     Plaintiff and Class members have also been harmed and damaged in the amount of the market value of the hacker's access to their Private Information that was permitted without authorization by HCA. This market value for access to Private Information can be determined by reference to both legitimate and illegitimate markets for such information.

90.     In sum, Plaintiff and Class members were injured as follows: (i) theft of their Private Information and the resulting loss of privacy rights in that information; (ii) improper disclosure of their Private Information; (iii) loss or diminished value of their Private Information; (iv) the lost value of access to Plaintiff's and Class members' Private Information permitted by HCA; (v) the amount of the actuarial present value of ongoing high-quality identity defense and credit monitoring services made necessary as mitigation measures because of HCA's Data Breach; (vi) HCA's retention of profits attributable to Plaintiff's and Class members' Private Information that HCA

failed to adequately protect; (vii) the certain, imminent, and ongoing threat of fraud and identity theft, including the economic and non-economic impacts that flow therefrom; (viii) ascertainable out-of-pocket expenses and the value of their time allocated to fixing or mitigating the effects of the Data Breach; (ix) overpayments to HCA or goods and services purchased, as Plaintiff and Class members reasonably believed a portion of the price they paid for those goods and services would fund reasonable security measures that would protect their Private Information, which was not the case; and (x) nominal damages.

## V.    CLASS ACTION ALLEGATIONS

91.    Pursuant to Federal Rules of Civil Procedure 23(b)(2), 23(b)(3), and 23(c)(4), Plaintiff brings this action on behalf of herself and on behalf of all members of the following proposed Nationwide Class (the "Class"):

> All individuals residing in the United States whose Private Information was accessed and/or acquired by an unauthorized party as a result of the Data Breach reported to have occurred on or about July 5, 2023.

This definition may be further defined or amended by additional pleadings, evidentiary hearings, a class certification hearing, and orders of this Court.

92.    Excluded from the Class are HCA and HCA's parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which HCA has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

93.    Plaintiff reserves the right to modify or amend the definition of the proposed Class

before the Court determines whether certification is appropriate.

94. **Numerosity, Fed R. Civ. P. 23(a)(1):** The Class is so numerous that joinder of all members is impracticable. HCA has identified millions of customers whose Private Information may have been improperly accessed in the Data Breach. Those individuals' names and addresses are available from HCA's records, and Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods.

95. **Commonality and Predominance, Fed. R. Civ. P. 23(a)(2) and (b)(3):** Questions of law and fact common to the Class exist and predominate over any questions affecting only individual Class members. These include, but are not limited to, the following:

a) Whether HCA represented to Plaintiff and Class members that HCA would protect Plaintiff's and the Class members' Private Information;

b) Whether HCA owed a duty to Plaintiff and Class members to exercise due care in collecting, storing, and safeguarding their Private Information;

c) Whether HCA breached a duty to Plaintiff and Class members to exercise due care in collecting, storing, and safeguarding their Private Information;

d) Whether HCA has a contractual obligation to safeguard Plaintiff's and Class members' Private Information;

e) Whether HCA's conduct breached any contractual obligation to protect Plaintiff's and Class members' Private Information;

f) Whether HCA knew or should have known that its systems were vulnerable to a data breach;

g) Whether HCA was negligent in failing to implement reasonable and adequate security procedures and practices;

h) Whether HCA's security measures to protect its systems were reasonable in light of known legal requirements;

i) Whether HCA notified Plaintiff and Class members that their Private Information had been compromised as soon as practicable and without unreasonable delay after the Data Breach was discovered;

j) Whether the content of HCA's notice to Plaintiff and Class members that their Private Information had been compromised was adequate in light of known legal requirements;

k) Whether HCA violated its common law duties to Plaintiff and Class members by failing to promptly notify Plaintiff and Class members that their Private Information had been compromised;

l) Whether HCA adequately addressed the vulnerabilities that permitted the Data Breach to occur;

m) Whether HCA's conduct injured Plaintiff and the Class members;

n) Whether HCA's conduct violated HIPAA laws;

o) Whether HCA's conduct violated state consumer protection laws;

p) Whether HCA's conduct violated the laws of Florida and Louisiana;

q) Whether HCA's conduct violated state data privacy laws;

r) Whether HCA's conduct violated state data breach laws;

s) Whether Plaintiff and Class members are entitled to actual damages and/or punitive damages as a result of HCA's wrongful conduct;

t) Whether Plaintiff and Class members are entitled to restitution as a result of HCA's wrongful conduct; and

u)      Whether Plaintiff and Class members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

96.      **Typicality, Fed. R. Civ. P. 23(a)(3):** Plaintiff's claims are typical of other Class members' claims because Plaintiff and Class members were subjected to the same allegedly unlawful conduct and damaged in the same way. Plaintiff's Private Information was in HCA's possession at the time of the Data Breach and was compromised as a result of the Data Breach. Plaintiff's damages and injuries are akin to those of other Class members and Plaintiff seeks relief consistent with the relief of the Class.

97.      **Adequacy, Fed. R. Civ. P. 23(a)(4):** Consistent with Rule 23(a)(4), Plaintiff is an adequate representative of the Class because Plaintiff is a member of the Class and is committed to pursuing this matter against Defendant to obtain relief for the Class. Plaintiff has no conflicts of interest with the Class members. Plaintiff's counsel is competent and experienced in litigating class actions, including extensive experience in data breach and privacy litigation. Plaintiff intends to vigorously prosecute this case and will fairly and adequately protect the Class members interests.

98.      **Superiority and Predominance, Fed. R. Civ. P. 23(b)(3):** Consistent with Rule 23(b)(3), a class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. Common issues in this litigation also predominate over individual issues because those issues discussed in the above paragraph on commonality are more important to the resolution of this litigation than any individual issues. The purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to individual plaintiffs may not be sufficient to justify individual litigation. Here, the damages suffered by Plaintiff and the Class members are

relatively small compared to the burden and expense required to individually litigate their claims against HCA, and thus, individual litigation to redress HCA's wrongful conduct would be impracticable. Individual litigation by each Class Member would also strain the court system. Individual litigation creates the potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

99. **Risk of Prosecuting Separate Actions:** This case is appropriate for certification because prosecuting separate actions by individual proposed Class members would create the risk of inconsistent adjudications and incompatible standards of conduct for HCA or would be dispositive of the interests of members of the proposed Class.

100. **Ascertainability:** The Class is defined by reference to objective criteria, and there is an administratively feasible mechanism to determine who fits within the Class. The Class consist of individuals who provided their Private Information to HCA. Class membership can be determined using HCA's records.

101. **Injunctive and Declaratory Relief:** Class certification is also appropriate under Rule 23(b)(2) and (c). Defendant, through its uniform conduct, acted or refused to act on grounds generally applicable to the Class as a whole, making injunctive relief appropriate to the Class as a whole. Injunctive relief is necessary to uniformly protect the Class members' data. Plaintiff seeks prospective injunctive relief as a wholly separate remedy from any monetary relief.

## VI.    CAUSES OF ACTION

**COUNT I**
**Negligence**
**(On Behalf of Plaintiff and the Class)**

102. Plaintiff realleges and incorporates by reference herein the allegations contained in paragraphs 1 through 101, as if fully set forth herein.

103. Defendant requires its patients, including Plaintiff and Class members, to submit non-public Private Information in the ordinary course of providing medical care.

104. Defendant gathered and stored the Private Information of Plaintiff and Class members as part of its providers' business of providing them with medical services.

105. Plaintiff and Class members entrusted Defendant (through its providers) with their Private Information with the understanding that Defendant would safeguard their information.

106. Defendant had full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and Class members could and would suffer if the Private Information were wrongfully disclosed.

107. By assuming the responsibility to collect and store this data, and in fact doing so, and sharing it and using it for commercial gain, Defendant had a duty of care to use reasonable means to secure and safeguard their computer property—and Class members' Private Information held within it—to prevent disclosure of the information, and to safeguard the information from theft.

108. Defendant's duty to use reasonable security measures under HIPAA required Defendant to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(l). Some or all of the healthcare and/or medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.

109. Defendant owed a duty of care to Plaintiff and Class members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected the Private Information.

110. Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and its patients, including Plaintiff and Class members. That special relationship arose because Plaintiff and Class members entrusted Defendant (via Defendant-owned or operated hospitals or medical providers) with their confidential Private Information as a necessary part of being receiving medical care.

111. Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential Private Information.

112. Defendant was subject to an "independent duty," untethered to any contract between Defendant and Plaintiff or the Class.

113. Defendant breached its duties, thus was negligent, by failing to use reasonable measures to protect Class members' Private Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, (a) failing to adopt, implement, and maintain adequate security measures to safeguard Class members' Private Information; (b) failing to adequately monitor the security of their networks and systems; and (c) allowing unauthorized access to Class members' Private Information.

114. A breach of security, unauthorized access, and resulting injury to Plaintiff and the Class was reasonably foreseeable, particularly considering Defendant's inadequate security practices.

115.     It was foreseeable that Defendant's failure to use reasonable measures to protect Class members' Private Information would result in injury to Class members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches in the healthcare industry.

116.     Defendant has full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and Class members could and would suffer if the Private Information were wrongfully disclosed.

117.     Plaintiff and Class members were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing the Private Information of Plaintiff and Class members, the critical importance of providing adequate security of that Private Information, and the necessity for encrypting Private Information stored on Defendant's systems.

118.     It was therefore foreseeable that the failure to adequately safeguard Class members' Private Information would result in one or more types of injuries to Class members.

119.     Plaintiff and Class members had no ability to protect their Private Information that was in, and likely remains in, Defendant's possession.

120.     Defendant was in a position to protect against the harm suffered by Plaintiff and the Class as a result of the Data Breach.

121.     Defendant's duty extended to protecting Plaintiff and Class members from the risk of foreseeable criminal conduct of third parties, which has been recognized in situations where the actor's own conduct or misconduct exposes another to the risk or defeats protections put in place to guard against the risk, or where the parties are in a special relationship. *See* Restatement

(Second) of Torts § 302B. Numerous courts and legislatures have also recognized the existence of a specific duty to reasonably safeguard personal information.

122.    Defendant has admitted that the Private Information of Plaintiff and Class members was wrongfully lost and disclosed to unauthorized third persons as a result of the Data Breach.

123.    But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and Class members, the Private Information of Plaintiff and Class members would not have been compromised.

124.    There is a close causal connection between Defendant's failure to implement security measures to protect the Private Information of Plaintiff and Class members and the harm, or risk of imminent harm, suffered by Plaintiff and Class members. The Private Information of Plaintiff and Class members was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such Private Information by adopting, implementing, and maintaining appropriate security measures.

125.    As a direct and proximate result of Defendant's negligence, Plaintiff and Class members have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) lost or diminished value of their Private Information; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time; (iv) loss of benefit of the bargain; and (v) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

126.     As a direct and proximate result of Defendant's negligence, Plaintiff and Class members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

127.     Additionally, as a direct and proximate result of Defendant's negligence, Plaintiff and Class members have suffered and will suffer the continued risks of exposure of their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information in its continued possession.

128.     Plaintiff and Class members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

129.     Plaintiff and Class members are also entitled to injunctive relief requiring Defendant to (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to all Class members.

## COUNT II
### Negligence *Per Se*
### (On behalf of Plaintiff and the Class)

130.     Plaintiff realleges and incorporates by reference herein the allegations contained in paragraphs 1 through 101, as if fully set forth herein.

131.     Pursuant to the Federal Trade Commission Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class members' Private Information.

132.    Pursuant to HIPAA, 42 U.S.C. § 1302d, *et seq*., Defendant had a duty to implement reasonable safeguards to protect Plaintiff's and Class members' Private Information.

133.    Pursuant to HIPAA, Defendant had a duty to render the electronic PHI they maintained unusable, unreadable, or indecipherable to unauthorized individuals, as specified in the HIPAA Security Rule by "the use of an algorithmic process to transform data into a form in which there is a low probability of assigning meaning without use of a confidential process or key." *See* definition of encryption at 45 C.F.R. § 164.304.

134.    Defendant breached its duties to Plaintiff and Class members under the FTC Act and HIPAA by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class members' Private Information.

135.    Defendant's failure to comply with applicable laws and regulations constitutes negligence *per se.*

136.    The injuries to Plaintiff and Class members resulting from the Data Breach were directly and indirectly caused by Defendant's violation of the statutes described herein.

137.    Plaintiff and Class members were within the class of persons the Federal Trade Commission Act and HIPAA were intended to protect and the type of harm that resulted from the Data Breach was the type of harm these statues were intended to guard against.

138.    But for Defendant's wrongful and negligent breach of their duties owed to Plaintiff and Class members, Plaintiff and Class members would not have been injured.

139.    The injuries and harms suffered by Plaintiff and Class members were the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that it was failing to meet its duties and that Defendant's breach would cause Plaintiff and

Class members to experience the foreseeable harms associated with the exposure of their Private Information.

140. As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class members have suffered injuries and are entitled to compensatory, consequential, and punitive damages in an amount to be proven at trial.

## COUNT III
### Breach of Implied Contract
### (On Behalf of Plaintiff and the Class)

141. Plaintiff realleges and incorporates by reference herein the allegations contained in paragraphs 1 through 101, as if fully set forth herein.

142. Defendant (through its providers) offered to provide services to patients, which are Plaintiff and Class members, in exchange for payment.

143. Defendant also required Plaintiff and the Class members to provide Defendant with their Private Information to receive medical care.

144. In turn, Defendant impliedly promised to protect Plaintiff's and Class members' Private Information through adequate data security measures.

145. Plaintiff and the Class members accepted Defendant's offer by providing Private Information to Defendant in exchange for receiving Defendant's services, and then by paying for and receiving the same.

146. Plaintiff and Class members would not have entrusted their Private Information to Defendant but-for the above-described agreement with Defendant.

147. Defendant materially breached its agreement(s) with Plaintiff and Class members by failing to safeguard such Private Information, violating industry standards necessarily incorporated in the agreement.

148.     Plaintiff and Class members have performed under the relevant agreements, or such performance was waived by the conduct of Defendant.

149.     The covenant of good faith and fair dealing is an element of every contract. All such contracts impose on each party a duty of good faith and fair dealing. The parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract along with its form.

150.     Defendant's conduct as alleged herein also violated the implied covenant of good faith and fair dealing inherent in every contract.

151.     The losses and damages Plaintiff and Class members sustained as described herein were the direct and proximate result of Defendant's breach of the implied contracts with them, including breach of the implied covenant of good faith and fair dealing.

<u>**COUNT IV**</u>
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

152.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-101 of above, as if fully set forth herein.

153.     Plaintiff and Class members have an interest, both equitable and legal, in the Private Information about them that was conferred upon, collected by, and maintained by HCA and that was ultimately stolen in the HCA Data Breach.

154.     HCA was benefited by the conferral upon it of the Private Information pertaining to Plaintiff and Class members and by its ability to retain, use, sell, and profit from that information.

HCA understood that it was in fact so benefited.

155.    HCA also understood and appreciated that the Private Information pertaining to Plaintiff and Class members was private and confidential and its value depended upon HCA maintaining the privacy and confidentiality of that Private Information. But for HCA's willingness and commitment to maintain its privacy and confidentiality, that Private Information would not have been transferred to and entrusted with HCA.

156.    HCA benefited through its unjust conduct in the form of the profits it gained through the use of Plaintiff's and Class members' Private Information.

157.    HCA also benefited through its unjust conduct by retaining money that it should have used to provide reasonable and adequate data security to protect Plaintiff's and Class members' Personal Information.

158.    It is inequitable for HCA to retain these benefits.

159.    As a result of HCA's wrongful conduct as alleged in this Complaint (including among things its failure to employ adequate data security measures, its continued maintenance and use of the Private Information belonging to Plaintiff and Class members without having adequate data security measures, and its other conduct facilitating the theft of that Private Information), HCA has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and Class members.

160.    MCA's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein, including the compiling and use of Plaintiff's and Class members' sensitive Private Information, while at the same time failing to maintain that information secure from intrusion and theft by hackers and identity thieves.

161.    It is inequitable, unfair, and unjust for HCA to retain these wrongfully obtained benefits. HCA's retention of wrongfully obtained monies would violate fundamental principles of

justice, equity, and good conscience.

162.    The benefit conferred upon, received, and enjoyed by HCA was not conferred officiously or gratuitously, and it would be inequitable, unfair, and unjust for HCA to retain the benefit.

163.    HCA's defective security and its unfair and deceptive conduct have, among other things, caused Plaintiff and Class members to unfairly incur substantial time and/or costs to mitigate and monitor the use of their Private Information and have caused Plaintiff and Class members other damages as described herein.

164.    Plaintiff and Class members have no adequate remedy at law.

165.    HCA is therefore liable to Plaintiff and Class members for restitution or disgorgement in the amount of the benefit conferred on HCA as a result of its wrongful conduct, including specifically: the value to HCA of the Private Information that was stolen in the Data Breach; the profits HCA received and is receiving from the use of that information; the amounts that HCA overcharged Plaintiff and Class members for the use of HCA's products and services; and the amounts that HCA should have spent to provide reasonable and adequate data security to protect Plaintiff's and Class members' Personal Information.

## VII.    REQUEST FOR RELIEF

WHEREFORE, Plaintiff and Class members demand judgment as follows:

A.    Certification of the action as a Class Action Pursuant to Federal Rule of Civil Procedure 23, and appointment of Plaintiff as Class Representative and her counsel of record as Class Counsel;

B.    That acts alleged herein be adjudged and decreed to constitute negligence;

C.    A judgment against Defendant for the damages sustained by Plaintiff and the Class,

and for any additional damages, penalties, and other monetary relief provided by applicable law;

      D.      An order providing injunctive and other equitable relief as necessary to protect the interests of the Class, including, but not limited to:

          1.      Ordering that Defendant engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

          2.      Ordering that Defendant engage third-party security auditors and internal personnel to run automated security monitoring;

          3.      Ordering that Defendant audit, test, and train its security personnel regarding any new or modified procedures;

          4.      Ordering that Defendant segment consumer data by, among other things, creating firewalls and access controls so that if one area of Defendant's systems is compromised, unauthorized third parties cannot gain access to other portions of Defendant's systems;

          5.      Ordering that Defendant purge, delete, and destroy in a reasonably secure manner consumer data not necessary for their provisions of services;

          6.      Ordering that Defendant conduct regular database scanning; and

          7.      Ordering that Defendant routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach.

      E.      By awarding Plaintiff and Class members pre-judgment and post-judgment interest

as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of the Complaint in this action;

F.      The costs of this suit, including reasonable attorney fees; and

G.      Such other and further relief as the Court deems just and proper.

## VIII.    <u>DEMAND FOR JURY TRIAL</u>

Plaintiff, individually and on behalf of all those similarly situated, hereby requests a jury trial, pursuant to Federal Rule of Civil Procedure 38, on any and all claims so triable.

DATED: July 25, 2023                    Respectfully submitted,

<u>/s/ Alexandra M. Honeycutt</u>
Alexandra M. Honeycutt
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929
Phone: (866) 252-0878
ahoneycutt@milberg.com

James E. Cecchi*
Jason H. Alperstein*
**CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Phone: (973) 994-1700
jcecchi@carellabyrne.com
jalperstein@carellabyrne.com

Jeff Ostrow*
**KOPELOWITZ OSTROW FERGUSON WEISELBERG GILBERT**
One West Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Phone: (953) 525-4100
ostrow@kolawyers.com

***Counsel for Plaintiff and the Proposed Class***
*To be admitted pro hac vice*